IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 8:09CR183 |
| vs. | ) | |
| | ) | REPORT AND |
| BARTON E. LANGENBERG, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the defendant's "Motion Challenging Indictment, Attacking Underlying Statutes, or, alternatively, Requiring Specific Intent" (Doc. 11).

In the Indictment (Doc. 1) and Superseding Indictment (Doc. 18), the defendant is charged with structuring certain financial transactions to evade the reporting requirements of 31 U.S.C. § 5313(a) and the regulations promulgated thereunder, in violation of 31 U.S.C. §§ 5324(a)(3), 5324(d)(1), 5324(d)(2), and 31 C.F.R. § 103.11(gg).  He contends that the statutes and regulations violate the nondelegation doctrine because Congress impermissibly delegated its constitutional authority to define crimes to the Secretary of the Treasury, and the Secretary impermissibly enacted regulations purporting to define crimes.  Defendant further contends that the statutes and regulations are unconstitutionally vague.

The court has considered the defendant's motion and brief, the government's responsive brief (Doc. 17), the statutes and regulations at issue, and the applicable case law, and recommends that the motion be denied.

## LEGAL ANALYSIS

### I.  Delegation

#### A

Article 1, section 1 of the United States Constitution provides that "all legislative powers herein granted shall be vested in a Congress of the United States."  The nondelegation doctrine generally forbids Congress to delegate its legislative power to another branch of government; *see*

*Mistretta v. United States*, 488 U.S. 361, 371 (1989); however, the plenary authority of Congress to "delegate significant portions of this power to the Executive" is well established.[1] *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 59 (1974); *United States v. Armstrong*, 186 F.3d 1055, 1062 n.4 (8th Cir. 1999), *cert. denied*, 529 U.S. 1018 & 1033 (2000).

"In determining what [Congress] may do in seeking assistance from another branch, the extent and character of that assistance must be fixed according to common sense and the inherent necessities of the government co-ordination." *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 406 (1928); *accord Mistretta v. United States*, 488 U.S. at 372; *Touby v. United States*, 500 U.S. 160, 165 (1989) (amendment to the Controlled Substances Act authorizing the Attorney General to schedule controlled substances on a temporary basis did not violate nondelegation doctrine). "Congress may delegate its legislative power to the executive branch if it 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform.'" *United States v. Zuniga*, 2008 WL 2184118 at *12, Case No. 4:07CR3156 (D. Neb., May 23, 2008) (quoting *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. at 409). "The intelligible-principle rule seeks to enforce the understanding that Congress may not delegate the power to make laws and so may delegate no more than the authority to make policies and rules that implement its statutes." *Loving v. United States*, 517 U.S. 748, 771 (1996).

> Applying this "intelligible principle" test to congressional delegations, our jurisprudence has been driven by a practical understanding that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives.... "The Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function." *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935). Accordingly, this Court has deemed it "constitutionally sufficient if Congress clearly delineates the

---

[1] "[T]he non-delegation doctrine has been used extremely sparingly. Indeed, the Supreme Court has only twice struck down a statute under the doctrine." *United States v. Chalmers*, 474 F. Supp. 2d 555, 567 (S.D.N.Y. 2007) (citing *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935); *Panama Ref. Co. v. Ryan*, 293 U.S. 388 (1935); and *Murphy ex rel. Estate of Payne v. United States*, 340 F. Supp. 2d 160, 180 (D. Conn. 2004) ("[T]he extent to which the non-delegation doctrine remains governing law is in question, insofar as no law has been found unconstitutional under its provisions in 70 years"), *aff'd*, 427 F.3d 158 (2d Cir. 2005))).

general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *American Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946).

*Mistretta v. United States*, 488 U.S. at 372-73 (citations omitted).

## B

The Bank Secrecy Act, 31 U.S.C. §§ 5313-5326, as amended, authorizes the Secretary of the Treasury to issue regulations requiring domestic financial institutions to report currency transactions in which they are engaged. Section 5313(a) provides:

> When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes), *in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation,* the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes....

31 U.S.C. § 5313(a) (emphasis added). The regulations implementing this section require financial institutions to file Currency Transaction Reports (CTRs) when they participate in transactions involving currency in excess of $10,000. 31 C.F.R. § 103.22(a).

It is illegal to structure one's financial transactions to evade the reporting requirement, and the defendant is charged with violating 31 U.S.C. §§ 5324(a)(3), 5324(d)(1) and 5324(d)(2), which provide:

> **Structuring transactions to evade reporting requirement prohibited**
>
>     **(a) Domestic coin and currency transactions involving financial institutions.—** No person shall, for the purpose of evading the reporting requirements of section 5313(a) or 5325 or any regulation prescribed under any such section...
>
> \* \* \* \*
>
>     (3)  structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.
>
> \* \* \* \*
>
>     **(d)  Criminal Penalty.—**
>
>         **(1) In general.—** Whoever violates this section shall be fined in accordance with title 18, United States Code, imprisoned for not more than 5 years, or both.

> **(2) Enhanced penalty for aggravated cases.**— Whoever violates this section while violating another law of the United States or as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period shall be fined twice the amount provided in subsection (b)(3) or (c)(3) (as the case may be) of section 3571 of title 18, United States Code, imprisoned for not more than 10 years, or both.

The Treasury regulation cited in the indictment, 31 C.F.R. § 103.11(gg), supplies the definition of the term "structure":

> For purposes of section 103.53[2], a person structures a transaction if that person, acting alone, or in conjunction with, or on behalf of, other persons, conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements under section 103.22 of this part. "In any manner" includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions, including transactions at or below $10,000. The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.

As the Supreme Court observed in *California Bankers Ass'n v. Shultz*, 416 U.S. at 64, the Bank Secrecy Act "is not self-executing, and were the Secretary to take no action whatever under his authority there would be no possibility of criminal or civil sanctions being imposed on anyone."

## C

In ruling on the defendant's motion, this court must decide whether Congress (1) clearly delineated a general policy, (2) the public agency which is to apply it, and (3) the boundaries of this delegated authority. *Mistretta v. United States*, 488 U.S. at 373.

As the Court noted in *California Bankers Ass'n v. Shultz*, 416 U.S. at 21, the Bank Secrecy Act of 1970 was enacted "following extensive hearings concerning the unavailability of foreign and domestic bank records of customers thought to be engaged in illegal activities." The Act authorizes the Secretary of the Treasury to prescribe by regulation certain bank recordkeeping and reporting

---

[2]31 C.F.R. § 103.53 allows the Secretary of the Treasury, within his discretion, to "disclose information reported under this part for any reason consistent with the purposes of the Bank Secrecy Act."

requirements, and the Act's penalties attach only upon violation of the regulations thus prescribed. *Id.* The expressed purpose of the Act is "to require records to be maintained because they 'have a high degree of usefulness in criminal tax, and regulatory investigations and proceedings.'" *United States v. Miller*, 425 U.S. 435, 442-43 (1976) (quoting 12 U.S.C. § 1829b(a)(1)); *California Bankers Ass'n v. Shultz*, 416 U.S. at 26; 31 U.S.C. § 5311. "In section 5324 ... Congress plainly sought to punish efforts to deprive the government of information that has 'a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings.'" *United States v. Jackson*, 983 F.2d 757, 769 (7th Cir. 1993) (quoting 31 U.S.C. § 5311).

"The fundamental precept of the delegation doctrine is that the lawmaking function belongs to Congress, U.S. Const., Art. I, § 1, and may not be conveyed to another branch or entity." *Loving v. United States*, 517 U.S. at 758. Congress has recognized and determined that financial records are highly useful in criminal, tax, and regulatory investigations and has delegated to the Secretary of the Treasury the authority to adopt and enforce regulations to achieve that end. The Secretary's choice whether to require the reports at all, or of what specific transactions, is limited by the purposes of the Act, i.e., to require certain reports or records where such reports or records have "a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings."[3] *United States v. Sans*, 731 F.2d 1521, 1528 (11th Cir. 1984), *cert. denied*, 469 U.S. 1111 (1985) (delegation of authority in statute authorizing the Secretary of the Treasury to require reports of transactions involving payment, receipt or transfer of United States currency was valid). "The legislative history of the act indicates that 'the domestic reporting requirements were enacted because law enforcement agencies found that the growth of financial institutions had been paralleled by an increase in criminal activity associated with them.'" *Id.* (quoting H.R. No. 975, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Admin. News, 4394, 4395).

The court finds that Congress has clearly delineated a policy to punish efforts to deprive the government of information that has a high degree of usefulness in criminal, tax, or regulatory

---

[3]The Secretary is required to exempt depository institutions from reporting requirements as to "businesses or categories of businesses, the reports on which have little or no value for law enforcement purposes." 31 U.S.C. § 5313(d)(1)(D).

investigations or proceedings. Congress has delegated to the Secretary of the Treasury the authority to adopt and enforce regulations to achieve that end. Congress, not the Secretary of the Treasury, established criminal penalties for violations of the Secretary's regulations. The statutes and regulations challenged by the defendant do not violate the nondelegation doctrine.

## II. Vagueness

The defendant next argues that the delegation of authority to the Secretary of the Treasury, discussed above, renders 31 U.S.C. § 5324(a)(3) unconstitutionally vague. The issue raised by the defendant is whether § 5324(a)(3), which incorporates the definition found in 31 C.F.R. § 103.11(gg) in accordance with 31 U.S.C. § 5313(a), is unconstitutionally vague.

> An overly vague statute "violates the first essential of due process of law," because citizens "must necessarily guess at its meaning and differ as to its application". *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). There is a two-part test to determine whether a statute is void for vagueness. The statute, first, must provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

*United States v. Bamberg*, 478 F.3d 934, 937 (8th Cir. 2007), *cert. denied*, 128 S. Ct. 1650 (2008) (parallel citations omitted).

"A vagueness challenge to a statute which does 'not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.'" *United States v. Orchard*, 332 F.3d 1133, 1138 (8th Cir. 2003) (quoting *United States v. Mazurie*, 419 U.S. 544, 550 (1975)); *United States v. Sheikh*, 367 F.3d 756, 764 (8th Cir. 2004).

The Eighth Circuit has held that the language of 31 U.S.C. 5324(a)(3) is not void for vagueness. *United States v. Noske*, 117 F.3d 1053, 1059 (8th Cir. 1997), *cert. denied*, 522 U.S. 1119 (1998)[4] (citing *United States v. Davenport*, 929 F.2d 1169, 1173 (7th Cir. 1991)). Examining the offenses charged in the Superseding Indictment "in light of the facts of the case at hand," the court finds that the statutes and regulations at issue provided the defendant with adequate notice of the proscribed conduct and provide explicit standards for those who seek to apply the statute.

---

[4] Noske was charged under the predecessor statute, 31 U.S.C. § 5324(3) (1988), which the court noted could be found in 1994 version at § 5324(a)(3) without substantive change. 117 F.3d at 1058. The same language is found in the current version of § 5324(a)(3)

### III. Specific Intent

As an alternative to striking the statutes and regulations, the defendant requests that the jury be instructed it must find specific criminal intent, not merely general intent, in order to return a conviction.

Counsel for the United States acknowledges that the structuring offense is a specific intent offense and the government intends to prove specific intent at trial. With this understanding, I recommend that the issue of jury instructions be deferred until the time of trial.

### RECOMMENDATION

For the reasons discussed above,

**IT IS RECOMMENDED** that the defendant's "Motion Challenging Indictment, Attacking Underlying Statutes, or, alternatively, Requiring Specific Intent" (Doc. 11) be denied, and that the issue of jury instructions be deferred until the time of trial.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten (10) business days after being served with the recommendation, specifying those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.

**DATED August 28, 2009.**

BY THE COURT:

s/ F.A. Gossett
**United States Magistrate Judge**